**Inderjit BADHWAR, et al., Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF the AIR FORCE, et al., Defendants.**

**Civ.A. No. 84–0154.**

United States District Court, District of Columbia.

Feb. 24, 1986.

Issac N. Groner, Raymond D. Battocchi, Alfred F. Belcuore, Judith E. Olingy, Steven P. Korostoff, Cole & Groner, P.C., Washington, D.C., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Barbara L. Gordon, Catherine J. Lanctot, Attys., U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs in this action are reporters who seek access under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to documents held by three departments of the United States Armed Forces. Although plaintiffs originally claimed entitlement to access to numerous documents held by each defendant, they later amended their summary judgment motion to address only one representative document from each defendant. The Court has twice, on March 6, 1985, 615 F.Supp. 698, and November 20, 1985, 622 F.Supp. 1364, addressed the parties' cross-motions for summary judgment in a Memorandum and Order (March 6 Mem. and Nov. 20 Mem.). The action is now before the Court, pursuant to the parties' agreement and stipulated schedule, on Plaintiffs' Memorandum on Disposition of Remaining Issues (filed Feb. 4, 1986) and defendants' response thereto. The parties have also submitted a joint proposed order to enter final judgment in the case.

The parties identify the following issues remaining for resolution by the Court:

1. Whether the Court should grant declaratory and injunctive relief respecting a January 7, 1983 Department of Justice Memorandum on fee waivers;

2. Whether the supplemental affidavit submitted by the Air Force adequately demonstrates that the Safety Report at issue has not been disclosed to nongovernmental entities so as to require its disclosure;

3. Whether the supplemental affidavit submitted by the Navy adequately rebuts the inference that photographs reviewed by the Safety Board were not provided to the Collateral Board;

4. Whether a FOIA exemption other than Exemption 2 applies to certain information excised from Navy documents; and

5. Whether documents reflecting implementation or rejection of recommendations contained in the safety reports at issue must be disclosed.

## I.

In Count III of their complaint, plaintiffs alleged that a Department of Justice memorandum (DOJ Memorandum) which sets out guidelines for granting fee waivers under the FOIA is invalid, seeking declaratory and injunctive relief. The Memorandum of March 6, 1985 held that the Air Force's failure to grant a fee waiver to plaintiffs in this action was arbitrary and capricious because it was contrary to the Air Force's own regulations. March 6 Mem. at 21–22. The Court then declined to reach the issue of the DOJ Memorandum, noting that "[i]n view of the foregoing, there is no occasion to appraise the Justice Department memorandum of 1983." *Id.* at 22.

Plaintiffs argue that the decision by our Court of Appeals in *Better Government Assoc. v. Department of State (BGA)*, 780 F.2d 86 (D.C.Cir.1986) requires this Court to reconsider its earlier statement and reach the issue of the DOJ Memorandum. The Court in *BGA* found that a public interest organization's challenge to the facial validity of the DOJ Memorandum remained ripe despite the fact that the agency agreed to waive the fees at issue. The Court directed the District Court on remand to "determine whether the DOJ guidelines utilized by the appellee departments are inconsistent with the mandate of FOIA." 780 F.2d at 96.

The Court in *BGA* applied the two-prong test for ripeness articulated in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). This test requires the Court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 780 F.2d at 92 (quoting *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515). Pursuant to the first prong, the Court in *BGA* found the issue of the facial

validity of the DOJ guidelines to present "purely legal questions" and therefore were "presumptively suitable for judicial review." *Id.* at 92. The Court then stated:

> Both appellee departments assert that they will continue to rely upon the DOJ guidelines in their evaluation of FOIA fee waiver requests....
>
> ... Where, as here, the agency has stated that the action in question *governs and will continue to govern* its decisions, such action must be viewed as final in our analysis of ripeness.

*Id.* at 93 (emphasis in original) (footnote omitted). The Court then went on to find that because the agency defendants unquestionably relied on the DOJ guidelines, their continued use would have "a 'direct and immediate' impact on the appellants that rises to the level of hardship." *Id.* at 93 (quoting *Abbott, supra,* 387 U.S. at 152, 87 S.Ct. at 1517).

█ Although the facts in the *BGA* case are admittedly very similar to the factual circumstances presented here, an important distinction remains, and the analysis of *BGA* leads to a different result. Here, plaintiffs allege in their complaint that defendants relied on the DOJ Memorandum, but in their supporting memorandum only state:

> The defendant military departments have undoubtedly relied upon the Rose [DOJ] Memorandum to some extent in denying plaintiffs' fee waiver requests. The memorandum was sent to agencies precisely so that they would consider its provisions in deciding such requests. Defendants do not contend they were unaware of the memorandum, or completely ignored it, when making the decisions involved in this case.

Plaintiffs' Combined Memorandum of Points and Authorities in Support of Motion for Summary Judgment on Counts II and III of the Complaint, and Opposition to Defendants' Motion for Summary Judgment on Those Counts (Plaintiffs' Combined Mem.) at 31 n. 14 (filed July 13, 1984). Although defendants vehemently defend the memorandum's validity, they never concede that they relied upon it in making the decision at issue or that they will use it as a basis for decision in the future. Moreover, the March 6 Memorandum found the Air Force action in denying plaintiffs' fee waiver request arbitrary and capricious for failure to follow its own regulations. Given defendant's deviation from one established procedure, there is little reason to presume its adherence to another.

This distinction between the present case and *BGA* is significant because the Court in *BGA* found the necessary "hardship" prong of the *Abbott* test to be met specifically because the agency defendants undisputably had relied, and would continue to rely, on the challenged guidelines. Here, the causal link between the mandate of the DOJ Memorandum and the future determinations of the military departments under the FOIA is more tenuous. *BGA* therefore does not dictate that this Court reconsider its earlier holding that under the circumstances of the case presented "there is no occasion to appraise the Justice Department memorandum of 1983." March 6 Mem. at 22.

## II.

The November 20 Memorandum noted plaintiffs' concern that certain portions of the safety reports at issue had been disclosed to outside contractors and thus were not exempt from disclosure under the deliberative process privilege of FOIA Exemption 5. 5 U.S.C. § 552(b)(5). The accompanying Order directed the Air Force to file an explanation of what portions of the safety report have been divulged to outsiders, and any justification for nevertheless protecting that information from disclosure under the FOIA.

█ The Air Force has filed the Declaration of Albert L. Pruden, Jr., Brigadier General, USAF, Director of Aerospace Safety, Air Force Inspection and Safety Center (Pruden Declaration) (filed Dec. 23, 1985). This Declaration provides:

The safety report itself is not divulged to the contractor.

. . . .

The manufacturer's representative will be told information necessary for him to effectively direct his analysis and, thus, be of the most assistance to the board. . . .

. . . The contractors are told that information learned during a mishap investigation is to be used only for the report prepared for the board and for no other purpose.

Pruden Declaration at ¶¶ 1, 3, 4.

The November 20 Memorandum contained the following quotation:

limited disclosure to proper outside persons [manufacturer's representatives on a 'need-to-know' basis] as are necessary to carry out effectively a purpose for assembling a governmental report in the first place do not waive its privilege.

Nov. 20 Mem. at 32 (quoting *Cooper v. Department of the Navy*, 558 F.2d 274, 278 (5th Cir.1977), *modified on rehearing*, 594 F.2d 484 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979) (citation omitted)). The Pruden Declaration adequately demonstrates that any disclosure to outside contractors of information ultimately contained in a safety report meets the standard articulated in *Cooper*. Complete disclosure of the safety reports, as argued for by plaintiffs, thus is not required.

### III.

The November 20 Memorandum recognized plaintiffs' concern that a reference in a Navy affidavit to "seemingly discarded" photographs, Affidavit of Commodore J.C. Breast, U.S. Navy, Commander, Naval Safety Center (Breast Affidavit) at ¶ 10 (filed March 29, 1985), might imply destruction of such photographs by the Safety Board. The accompanying Order directed the Navy to file a detailed explanation stating:

whether this reference in the Breast Affidavit at ¶ 10 to 250 photographs culled to 5 is actual or hypothetical; if actual, whether the 250 photographs mentioned, along with all other evidence considered by the Safety Board, were made available to the Collateral Board; and if not, where the photographs are, or how and why they were "seemingly discarded."

Nov. 20 Mem. at 18–19.

■ The Navy has now filed the Affidavit of Rear Admiral Henri B. Chase, U.S. Navy, Commander, Naval Safety Center (Chase Affidavit) (filed Dec. 23, 1985). This affidavit provides:

The referece [sic] in the Breast Affidavit to 5 photographs culled from 250 photographs was intended only as hypothetical. . . . It has long been customary . . . for all photographs examined by the Mishap [Safety] Board to be made available to the *JAGMAN* [collateral] investigation. I have no evidence to suggest that this procedure was not followed in the present case.

Chase Affidavit at ¶ 3. The Navy's explanation as to the photographs is vague, and, in fact arouses suspicion that photographs were indeed destroyed. It seems most likely that there once were photographs and now there are none. However, there is no suggestion that whatever destruction may have taken place occurred after plaintiffs' FOIA request, or this case, was filed; therefore, there is no abuse actionable by this Court under the FOIA. The FOIA is designed to reach existing documents. It does not authorize the reconstruction of documents or sanctions for failure to preserve them. There are, however, Armed Services regulations which contemplate the preservation of documents, particularly photographs taken in connection with safety and collateral investigations, for the use of, among others, private litigants. *Cf. Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F.Supp. 180, 206 (D.D.C.1984). Here, the responsible Navy officials may well have been lax in the performance of their document and photograph preservation duties. *See id.* at 204–08. If so, this is a matter for the Inspector General, the Comptroller General, and congressional oversight committees. It is not

a matter cognizable by this Court in this action. Consequently, the record, as it now stands, warrants no further inquiry by this Court into the matter.

### IV.

■ The November 20 Memorandum noted that *in camera* review of the documents the Navy claimed were protected from disclosure under FOIA Exemption 2, 5 U.S.C. § 552(b)(2), revealed that they do not relate solely to "trivial administrative matters of no genuine public interest," *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir. 1983), but instead "contain significant substantive information." Nov. 20 Mem. at 16. The Court directed the Navy to file "a detailed justification for the application of some FOIA exemption other than Exemption 2, such as Exemption 5, to this information." *Id.* The Chase Affidavit at ¶ 2 details why the non-administrative information in these documents is protected from disclosure under Exemption 5. *In camera* review confirms that the non-administrative portions of the documents at issue contain conclusions and recommendations of the Safety Board. As such, this material is properly exempt from disclosure under the FOIA.

### V.

■ Defendants, not plaintiffs, raise as an issue whether documents reflecting implementation or rejection of recommendations contained in the Safety Report at issue must be disclosed. Plaintiffs' FOIA request asked for "[a]ll recommendations made in any accident or incident report since January 1, 1950" and "[d]ocuments showing which recommendations were implemented (and when) and which were not." Plaintiffs' Combined Mem. at 36–37. The Court has held that the recommendations are predecisional and thus protected from disclosure under FOIA Exemption 5. March 6 Mem. at 9. Defendants represent that no document conveniently lists recommendations with corresponding corrective action. Defendants further represent that although records of corrective action con-

sistent with recommendations may be generated, such corrective action is often the result of many sources of input, not just safety reports. Such documents are thus not directly responsive to plaintiffs' request. The November 20 Memorandum reasons that the portion of a safety report which recites all corrective action taken should be disclosed. Nov. 20 Mem. at 14–15. The Chase Affidavit confirms that "a review or account would ordinarily be included in a close-out endorsement where previous endorsements indicate that corrective action has been ordered." Chase Affidavit at ¶ 1. According to the record as it now exists, such a summary is the limit of the information regarding corrective action to which plaintiffs are entitled under the FOIA request at issue in this action.

\* \* \*

The accompanying Order will reflect the joint proposals of the parties, as well as the additional rulings of this Memorandum. Pursuant to the parties' agreement, the Order will enter final judgment in this action and dismiss plaintiffs' complaint.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment and the entire record in this case, for the reasons set forth in the Memoranda of March 6, 1985, November 20, 1985, and February 24, 1986, it is hereby

ORDERED, ADJUDGED AND DE-CREED: that defendants' motion for summary judgment on Count I of the complaint is granted in part and denied in part, and that plaintiffs' motion for summary judgment on Count I of the complaint is granted in part and denied in part, as follows:

1) The following are exempt from disclosure:

(a) all withheld safety report witness statements;

(b) the withheld findings, conclusions, and recommendations in the safety board reports;

(c) "For Official Use Only" stamps appearing on requested and admittedly releasable documents;

(d) all facts in the safety reports drawn only from confidential witness statements;

(e) portions of autopsy reports derived from confidential witness statements;

(f) notations on photographs withheld by the Navy.

2) The following must be disclosed to the public:

(a) the accident reports made available to the litigants in *Machin v. Zuckert*, 316 F.2d 336, 339 (D.C.Cir.), *cert. denied*, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963);

(b) requested documents admittedly in the public record;

(c) all factual portions of the Navy's safety report that are not derived from confidential witness statements;

(d) all photographs contained in the Navy safety report;

(e) factual information contained in Air Force autopsy reports;

(f) all portions of technical reports and engineering evaluations, except those portions which disclose outside contractors' findings, recommendations, and conclusions; and it is hereby

ORDERED, ADJUDGED AND DE-CREED: that the defendants' motion for summary judgment on Counts II and III of the complaint be, and is hereby denied; and it is

ORDERED, ADJUDGED AND DE-CREED: that the Air Force's refusal to waive fees for the plaintiffs was arbitrary, capricious, and an abuse of discretion; and it is

ORDERED, ADJUDGED AND DE-CREED: that plaintiffs' motion for summary judgment on Count II of the complaint be, and is hereby granted; and it is

ORDERED, ADJUDGED AND DE-CREED: that the Air Force shall refund to plaintiffs the amount of $167.10 paid for requested documents, and it is

ORDERED, ADJUDGED AND DE-CREED: that the legal principles decided herein with respect to the "sample" safety reports shall apply to all other safety reports at issue in this case, and it is

ORDERED, ADJUDGED AND DE-CREED: that the stay entered on December 13, 1986, shall automatically expire with respect to any documents (or parts thereof) presently covered by the stay immediately upon a decision by the Department of Justice not to appeal this Court's order directing disclosure of any such documents (or parts thereof); and it is

ORDERED, ADJUDGED AND DE-CREED: that any other claims for relief by any party not otherwise addressed in this Order are hereby dismissed; and it is

ORDERED, ADJUDGED AND DE-CREED: that the entire action should be, and hereby is, DISMISSED with prejudice.